1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DYLAN LAMM, a minor by and through his
guardian ad litem, MARY CATHERINE
DOHERTY, and KEVIN LAMM,

            Plaintiffs,

      v.

BUMBO, BUMBO LIMITED, BUMBO
(PTY) LTD., and TARGET CORPORATION,

            Defendants.
_____/

WENDY D. WHITSON, individually and on
behalf of all others similarly situated,

            Plaintiff,

      v.

BUMBO, BUMBO LIMITED, BUMBO
(PTY) LTD., and TARGET CORPORATION,

            Defendants.
_____/

No. C 07-04807 MHP
No. C 07-05597 MHP

**MEMORANDUM & ORDER**

**Re: Bumbo (Pty) Ltd.'s Motion to Set
Aside Default, Quash Service, Dismiss
for Insufficient Service and Lack of
Personal Jurisdiction, and for Sanctions**

      In the action numbered C 07-04807, plaintiffs Dylan Lamm et al. seek relief for personal

injuries sustained as a result of using the allegedly defective Bumbo Baby Sitter manufactured in

South Africa by defendant Bumbo (Pty) Ltd. ("Bumbo-Pty") and sold at the retail level in the United

States by defendant Target Corporation.  In the related action numbered C 07-05597, plaintiff

Wendy Whitson seeks relief for harm sustained as a result of purchasing the same allegedly

defective Bumbo Baby Sitter.  Jurisdiction in both actions is based on diversity.  28 U.S.C. § 1332.

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1       Defendant Bumbo-Pty has filed a motion in the <u>Whitson</u> action seeking to set aside default.

2 Additionally, defendant Bumbo-Pty has filed identical motions in both the <u>Lamm</u> and <u>Whitson</u>

3 actions, seeking to quash service and dismiss for insufficient service and lack of personal

4 jurisdiction.  Defendant Target Corporation has appeared in this action and has not contested the

5 court's jurisdiction.  Having considered the parties' submissions, the court enters the following

6 memorandum and order.

7

8 BACKGROUND

9       Plaintiff Dylan Lamm is a minor child whose mother and father are plaintiffs Mary Catherine

10 Doherty and Kevin Lamm.  Petition for Removal, Exh. A ¶¶ 1–2 (hereinafter "Lamm Complaint").

11 Dylan's parents received the Bumbo Baby Sitter as a baby shower gift from their friend plaintiff

12 Wendy Whitson who purchased the product from a Target store in Sonoma County, California.  <u>Id.</u> ¶

13 11; Whitson Complaint ¶¶ 10, 22; <u>See</u> <u>also</u> Supplemental Declaration of Fietz in Support of Motion

14 to Relate Cases ¶ 2.  Dylan, then a six month old infant, was placed into the Bumbo Baby Sitter by

15 his father Kevin.  Lamm Complaint ¶ 12.  While seated in the Sitter on top of a table, Dylan fell over

16 and out of the Sitter, striking his head and other parts of his body on the ground.  <u>Id.</u>; <u>see also</u> Joint

17 CMC Statement at 1:27.

18       Dylan and his parents filed a complaint on August 16, 2007 asserting causes of action for

19 strict product liability, negligence, wrongful infliction of emotional distress, and violations of

20 California Business of Professions Code section 17200.  <u>See</u> Lamm Complaint.  Whitson filed a

21 separate class action complaint on November 2, 2007 asserting causes of action for violation of state

22 consumer protection laws, breach of express and implied warranties, and unjust enrichment.  <u>See</u>

23 Whitson Complaint.  All plaintiffs are residents of Sonoma County, California.  Lamm Complaint ¶

24 1; Whitson Complaint ¶ 10.

25

26 I.     <u>Facts Related to Personal Jurisdiction</u>

27       Defendant Bumbo-Pty is a South African company that manufactures a product known as the

28 Bumbo Baby Sitter, an infant seat.  Johnston Dec., Exh. E, Buitendach Dec. ¶ 2.  Bumbo-Pty is a

2

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    private company organized under the laws of South Africa and has its principal place of business in

2    Pretoria, South Africa.  Id. ¶ 4.  Bumbo-Pty does not have corporate offices, warehouses,

3    manufacturing plants, bank accounts, or business licenses in the United States, nor does it have

4    employees, officers or directors who reside in the United States.  Id. ¶¶ 7–13.  Moreover, Bumbo-Pty

5    has never conducted any board meetings or paid any taxes in the United States.  Id. ¶¶ 16–17.  The

6    Bumbo Baby Sitter is manufactured and assembled entirely in Bumbo-Pty's one and only

7    manufacturing plant in Pretoria, South Africa.  Id. ¶¶ 5–6.

8         Bubmo-Pty attests that it "does not maintain a sales force in the . . . United States" and "does

9    not now advertise and never has advertised in the . . . United States."  Id. ¶¶ 18–19.  Bumbo-Pty's

10   website www.bumbo.co.za, however, describes the company as a "worldwide" exporter of the

11   Bumbo Baby Sitter and lists as one of its "major" United States customers defendant Target

12   Corporation.  Fietz Dec., Exh. D, "Company Profile."

13        Having viewed this website on March 10, 2008, the court takes judicial notice of the fact that

14   the "Sales and Marketing Opportunities" section of the website states, "We are seeking reliable and

15   progressive Retailers with the proven ability to promote, sell, stock and serve our products. . . . As

16   our Retailers, we will support you with the highest quality merchandise, outstanding promotional

17   programs, and continuous technical training."

18        Bumbo-Pty's website also states that it has been granted patent application number

19   6,626,487 by the United States Patent and Trademark Office.  Id.  Having viewed this patent dated

20   September 30, 2003, the court takes judicial notice of the fact that the inventor is listed as Johan

21   Nicolaas Buitendach, the owner of defendant Bumbo-Pty.  See Johnston Dec., Exh. E, Buitendach

22   Dec. ¶ 1.  The patent discloses an invention for a "Baby Chair" that provides a "solution" to the

23   "problem with small or young babies which can not sit up without assistance or not sit up safely."

24        Bumbo-Pty's website also touts various awards and accreditations the Bumbo Baby Sitter

25   has received from entities in the United States.  Fietz Dec., Exh. D, "Company Profile."  Awards

26   include the National Parenting Seal of Approval in 2005, iParenting Media Awards in 2003,

27   iParenting Hot Awards in 2003, Top 10 Coolest Products in 2005 by the Chicago Sun Times, and

28   TTT Toy Tested Mark of Excellence in 2004.  Id.  Accreditations include one from Bureau Veritas

1   which according to Bumbo-Pty's website, has tested the Bumbo Baby Sitter according to U.S.

2   Consumer Safety Regulations.  Id.

3        In response to the present litigation, the United States Consumer Product and Safety

4   Commission instituted a voluntary recall of the Bumbo Baby Sitter in October 2007.  Fietz Dec.,

5   Exh. D, "Urgent News Flash."  The products were temporarily removed from store shelves and

6   Bumbo-Pty altered the content and placement of the warning labels and changed some of the images

7   on the product packaging.  Id.

8

9   II.     Facts Related to Service of Process

10        Plaintiffs have made several attempts to serve process on defendant Bumbo-Pty and the other

11   defendants "Bumbo" and "Bumbo Limited."  On November 16, 2007, plaintiffs in the Whitson

12   action purported to serve "Bumbo" by delivering the summons and complaint to "Dione Buchanon,

13   as Owner for Bumbo," at the address 12248 Fm 1485, Conroe, TX 77306.  See C 07-05597, Docket

14   Entry 5, Affidavit of Service filed December 11, 2007.  Having failed to appear within the proper

15   time limit, default was entered as to "Bumbo" on December 27, 2007.  See C 07-05597, Docket

16   Entry 8.  Also on December 27, 2007, plaintiffs in the Lamm action purported to serve "Bumbo

17   Limited" by delivering the summons and complaint to "Mark Buchanan, as Owner for Bumbo

18   Limited," also at the same address 12248 Fm 1485, Conroe, Texas 77306.  See C 07-04807, Docket

19   Entry 15, Affidavit of Service filed January 7, 2008.

20        According to Bumbo-Pty, however, both "Bumbo" and "Bumbo Limited" are non-existent

21   legal entities.  Moreover, Bumbo-Pty asserts that the Conroe, Texas company that received the

22   summons and complaint in both the Lamm and Whitson actions is actually a company named

23   Wartburg Enterprises, Inc. ("Wartburg"), a distributor of the Bumbo Baby Sitter in Texas.  Johnston

24   Dec., Exh. E, Buitendach Dec. ¶ 22.  Bumbo-Pty states further that it and Wartburg are separate

25   companies and do not share common shareholders, officers, directors, employees or offices, and

26   Wartburg and its officers are not authorized by Bumbo-Pty to accept service of process on behalf of

27   Bumbo-Pty.  Id. ¶¶ 23–24.

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

4

UNITED STATES DISTRICT COURT
For the Northern District of California

1    According to the <u>Lamm</u> and <u>Whitson</u> plaintiffs, however, "the relationship of the Texas

2 entity to Bumbo-Pty is not what Bumbo represents it to be."  Lamm Opp. filed February 12, 2008 at

3 3.  Plaintiffs state that as a result of the <u>Lamm</u> action, the United States Consumer Product Safety

4 Commission issued a nationwide voluntary recall of the Bumbo Baby Sitter in October 2007.  <u>Id.</u> at

5 4.  A website, <u>www.bumbosafety.com</u>, was created to provide information about the recall.  Fietz

6 Dec., Exh. B.  Every page of the website lists contact information for an entity named "Bumbo

7 International," and the address listed is the same address as the Conroe, Texas entity which

8 defendant claims is Wartburg Enterprises.  Moreover, the <u>www.bumbosafety.com</u> website states that

9 the Bumbo Baby Sitter is "[d]esigned and manufactured by Bumbo International," and the website is

10 directly linked to another website with the address <u>www.bumboseat.com</u>.  This linked website,

11 <u>www.bumboseat.com</u>, markets and sells the Bumbo Baby Sitter directly to consumers and lists

12 under its contact information the same physical Conroe, Texas address which defendant claims is the

13 address of Wartburg Enterprises.

14    On January 25, 2008, plaintiffs in both the <u>Lamm</u> and <u>Whitson</u> actions purported to serve

15 defendant Bumbo-Pty by personally delivering a copy of the summons and complaint to "Antoinette

16 Wagenaar, as agent for [Bumbo-Pty]" at the address 212 Hardy Muller Street, Rosslyn, Gauteng,

17 South Africa.  <u>See</u> C 07-04807, Docket Entry 37, Affidavit of Service filed February 11, 2008; C 07-

18 05597, Docket Entry 35, Affidavit of Service filed February 11, 2008.

19    Antoinette Wagenaar is a director of Bumbo-Pty and is employed at Bumbo-Pty's corporate

20 headquarters and registered office at the 212 Hardy Muller Street address in South Africa.  Johnston

21 Dec., Exh. E, Wagenaar Dec. ¶¶ 1, 5.  On January 25, 2008, Wagenaar was informed that an

22 unknown person was in the reception area attempting to deliver a package.  <u>Id.</u> ¶ 6.  Without

23 identifying himself and without stating that he was a Sheriff, the unknown person handed Wagenaar

24 a package but did not explain the nature and contents of the package.  Id. ¶¶ 8–10.  Wagenaar was

25 handed the package, but did not sign any documentation for the unknown person acknowledging that

26 she had received the package.  <u>Id.</u> ¶ 7.

27    The affidavits of service filed with the court on February 11, 2008 in both the <u>Lamm</u> and

28 <u>Whitson</u> actions list an individual named Neil Thuynsma who attests that he personally delivered the

UNITED STATES DISTRICT COURT
For the Northern District of California

1  summons and complaint to Antoinette Wagenaar in South Africa.  See C 07-04807, Docket Entry

2  37; C 07-05597, Docket Entry 35.  Neil Thuynsma lists his address as 65 Park Lane, 1 Sandton

3  Close, Block B, 2nd Floor, Sandown, (South Africa).  Id.  Defendants believe that this address is the

4  address of SABMiller, a brewery located near Bumbo-Pty's corporate office where Antoinette

5  Wagenaar was served, and that Neil Thuynsma is an employee of SABMiller.  Johnston Dec., Exhs.

6  B & C.

7

8  DISCUSSION

9  I.      Rule 12(b)(2)—Lack of Personal Jurisdiction

10          Defendant Bumbo-Pty moves to dismiss for lack of personal jurisdiction under Federal Rule

11  of Civil Procedure Rule 12(b)(2).  The general rule is that personal jurisdiction over a defendant is

12  proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate

13  federal due process.  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  Where, as

14  here in this diversity action, there is no applicable federal statute governing personal jurisdiction, the

15  district court applies the law of the state in which the district court sits.  See Fed. R. Civ. Pro.

16  4(k)(1)(A); Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998).

17          Because California's long-arm jurisdictional statute is coextensive with federal due process

18  requirements, the jurisdictional analyses under state law and federal due process are the same.

19  Panavision, 141 F.3d at 1320; Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise

20  jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States").

21  A court may exercise personal jurisdiction over a defendant consistent with due process only if he or

22  she has "certain minimum contacts" with the relevant forum "such that the maintenance of the suit

23  does not offend 'traditional notions of fair play and substantial justice.'"  International Shoe Co. v.

24  Washington, 326 U.S. 310, 316 (1945).

25          "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic

26  that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may

27  exercise only 'specific' jurisdiction—that is, jurisdiction based on the relationship between the

28  defendant's forum contacts and the plaintiff's claim."  Yahoo! Inc. v. La Ligue Contre Le Racisme

6

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006).  Here, Bumbo-Pty has no offices,

2    warehouses, manufacturing plants, bank accounts, officers, employees, or other business contacts in

3    California.  Moreover, the Bumbo Baby Sitter is manufactured and assembled entirely in Bumbo-

4    Pty's one and only manufacturing plant in South Africa, where it also maintains its corporate offices.

5    Plaintiff concedes that there are insufficient contacts to support general personal jurisdiction.  Only

6    specific jurisdiction is at issue.

7         The Ninth Circuit analyzes specific jurisdiction according to a three-prong test: (1) the non-

8    resident defendant must purposefully direct his activities at the forum state or purposefully avail

9    himself of the benefits and protections of the laws of the forum state, (2) the claim must be one

10   which arises out of or relates to the defendant's forum-related activities, and (3) the exercise of

11   personal jurisdiction must be reasonable.  Id. at 1205–1206 (citing Schwarzenegger v. Fred Martin

12   Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)).

13        Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the

14   plaintiff bears the burden of demonstrating that jurisdiction is appropriate.  Schwarzenegger, 374

15   F.3d at 800.  Where, as here, the motion is based on written materials rather than an evidentiary

16   hearing, the plaintiff need only make a prima facie showing of jurisdictional facts.  Id.  Moreover, in

17   the context of specific jurisdiction, the plaintiff bears the burden of satisfying the first two prongs of

18   the three-part test and if the plaintiff succeeds, the burden then shifts to the defendant to "'present a

19   compelling case' that the exercise of jurisdiction would not be reasonable."  Id. at 802.  While the

20   plaintiff cannot rely solely on the complaint to establish personal jurisdiction, the court must take

21   uncontroverted allegations as true and resolve conflicts between the facts contained in the parties'

22   affidavits in favor of the plaintiff.  American Tel. & Tel. Co. v.Compagnie Bruxelles Lambert, 94

23   F.3d 586, 588 (9th Cir. 1996).

24

25        A.    Purposeful Availment and Purposeful Direction

26        In Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102 (1987), a products

27   liability case like this one, the Supreme Court was unanimous in determining that the exercise of

28   personal jurisdiction would be unreasonable and unfair.  Id. at 113–116.  The court split, however,

7

over the degree and character of minimum contacts required to find purposeful direction and availment under a stream of commerce theory. The split in <u>Asahi</u> is well-known and has been thoroughly explicated by other courts. <u>See</u> <u>Lesnick v. Hollingsworth & Vose Co.</u>, 35 F.3d 939, 944–945 (4th Cir. 1994); <u>Pennzoil Products Co. v. Colelli & Associates, Inc.</u>, 149 F.3d 197, 204–205 (3rd Cir. 1998). Here, a brief summary will suffice.

Four justices led by Justice Brennan concluded that when a defendant places a product into a "regular and anticipated" stream of commerce and is aware that the product is or may be directed into the forum state, the defendant is subject to personal jurisdiction. <u>Asahi</u>, 480 U.S. at 116–117. Four justices led by Justice O'Connor concluded that mere awareness was insufficient and that a showing of some additional conduct is required to satisfy due process. Justice O'Connor stated:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum State.

<u>Id.</u> at 112. The ninth justice, Justice Stevens, concluded that because the Court was unanimous in determining that the exercise of jurisdiction would be unreasonable and unfair, it was unnecessary to examine the minimum contacts or articulate a "purposeful direction" test. <u>Id.</u> at 121–122. Even assuming *arguendo* that a test ought to be formulated and applied, Justice Stevens reasoned that placing a product into the stream of commerce may rise to the level of purposeful availment depending on "the volume, the value, and the hazardous character of the components." <u>Id.</u> at 122.

Four years after <u>Asahi</u> was decided, this court in 1991 recognized that "the question of what constitutes purposeful availment under a stream of commerce theory of personal jurisdiction is still open." <u>Seltzer Sister Bottling Co., Inc. v. Source Perrier, S.A.</u>, 1991 WL 279273 at *6 (N.D. Cal. 1991) (Patel, J.) (exercising personal jurisdiction over defendant because facts were sufficient to meet either the O'Connor or Brennan <u>Asahi</u> tests). Today—over twenty years after <u>Asahi</u> was decided—this still appears to be an open question in the Ninth Circuit[1].

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    The Ninth Circuit commented on <u>Asahi</u> shortly after it was decided. <u>Shute v. Carnival</u>

2    <u>Cruise Lines</u>, 897 F.2d 377 (9th Cir. 1990), <u>rev'd on other grounds</u>, 499 U.S. 585 (1991). In <u>Shute</u>,

3    a cruise ship passenger brought suit against a cruise line seeking damages for injuries sustained in a

4    slip and fall. <u>Id.</u> at 379. The court determined that the defendant cruise line purposefully availed

5    itself of the forum state because "[i]t advertised in the local media, promoted its cruises through

6    brochures sent to travel agents in that state, . . . paid a commission on sales of cruises in that state,

7    [and] conducted promotional seminars in [the state] designed to increase its sales to [state]

8    residents." <u>Id.</u> at 382. The facts presented in <u>Shute</u> were sufficient to meet Justice O'Connor's more

9    stringent purposeful availment standard. The court, therefore, did not reach the question of whether,

10   under Justice Brennan's standard, the cruise line's "knowledge that ticket sales were being made to

11   Washington residents [was], in itself," sufficient to establish purposeful availment. <u>Id.</u> at 382 n.3.

12   Notably, the Ninth Circuit in <u>Shute</u> was silent as to the continuing viability of <u>Hedrick v.</u>

13   <u>Daiko Shoji Co., Ltd.</u>, 715 F.2d 1355 (9th Cir. 1983), a products liability case predating <u>Asahi</u>. In

14   <u>Asahi</u>, Justice Brennan cited the Ninth Circuit's <u>Hedrick</u> case as support for the proposition that

15   "most courts and commentators have found that jurisdiction premised on the placement of a product

16   into the stream of commerce is consistent with the Due Process Clause, and have not required a

17   showing of additional conduct." <u>Asahi</u>, 480 U.S. at 117. The <u>Hedrick</u> case involved an injured

18   longshoreman who sued a Japanese manufacturer of a defective wire-rope splice used to secure a

19   ship's boom. <u>Id.</u> at 1356. The wire-rope splices were used on ocean-going vessels serving United

20   States ports, including the ports of the forum state of Oregon where the longshoreman was injured.

21   <u>Id.</u> at 1358–1359. The district court ruled that it did not have personal jurisdiction over the Japanese

22   splice manufacturer, but the Ninth Circuit reversed stating that "[a] manufacturer or supplier of a

23   defective product who knew or should have known that a product would enter the stream of

24   commerce can be subjected, consistently with due process, to a forum state's long-arm jurisdiction

25   and be sued in the forum where the injury occurred." <u>Id.</u> at 1358.

26   In <u>Omeluk v. Langsten Slip & Batbyggeri A/S</u>, 52 F.3d 267 (9th Cir. 1995), the Ninth Circuit

27   recognized that <u>Hedrick</u> was disapproved by Justice O'Connor in her plurality opinion in <u>Asahi</u>. <u>Id.</u>

28   at 271. The Ninth Circuit, however, fell short of expressly overruling <u>Hedrick</u> stating instead that "*if*

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    [Justice O'Connor's] portion of Asahi is the law, *then* Hedrick is no longer the law of this circuit."

2    Id. (emphasis added).  In Omeluk, a seaman brought suit against a Norwegian company which

3    repaired and refurbished the vessel on which the seaman was injured when a grate fell onto the deck.

4    Id. at 268–269.  In affirming dismissal for lack of personal jurisdiction over the defendant in

5    Omeluk, the Ninth Circuit distinguished Hedrick on its facts, noting that the plaintiff in Omeluk,

6    unlike the plaintiff in Hedrick, was injured in the Bering Sea in international waters off Alaska, far

7    away from the forum state of Washington.  Id. at 271, 269.  Moreover, the court found it significant

8    that the defendant was a "custom refurbisher," rather than a "manufacturer of a large quantity of

9    fungible goods."  Id.

10        In the absence of clear direction from the Ninth Circuit on what constitutes purposeful

11   availment under a stream of commerce theory, district courts in this circuit have taken different

12   approaches.  Some courts have continued to rely on Hedrick.  See e.g., Pacific Fisheries Corp. v.

13   Power Transmission Products, Inc., 2000 WL 1670917 at *5–6 (D. Hawaii 2000) (Mollway, J.)

14   (relying on Hedrick to hold that defendant who subleased an ammonia tank to plaintiff, knowing that

15   it would end up in Hawaii, purposefully availed itself of the benefits and protections of the forum

16   state). Others have cited approvingly to Justice O'Connor's plurality opinion requiring additional

17   conduct beyond mere awareness.  See e.g., VCS Samoa Packing Co. v. Blue Continent Products, 83

18   F.Supp. 2d 1151, 1154–1155 (S.D. Cal. 1998) (Keep, J.) (citing to Justice O'Connor's plurality

19   opinion approvingly and concluding that the exercise of jurisdiction would offend due process

20   because "*plaintiff* initiated contact with defendant in South Africa for the purpose of purchasing tuna

21   for delivery *to American Samoa*"*)* (second emphasis added).  Other courts have taken an agnostic

22   approach and have applied both Justice O'Connor's and Justice Brennan's tests.  See e.g., Brewer v.

23   Dodson Aviation, 2006 WL 2252835 at *4 (W.D. Wash. 2006) (Zilly, J.) (exercising jurisdiction

24   over defendant that, under Justice Brennan's test, placed an allegedly defective air pump into the

25   broad stream of commerce and, under Justice O'Connor's test, advertised, provided customer

26   service, and made direct and indirect sales of air pumps in the forum state).

27        To date, the Ninth Circuit has yet to definitively overrule Hedrick, and as already discussed,

28   some district courts have continued to rely on that case.  Yet, from time to time, the Ninth Circuit

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    has cited to language from Justice O'Connor's plurality opinion with unambiguous approval. <u>See</u>

2    <u>Holland America Line Inc. v. Wartsila North America, Inc.</u>, 485 F.3d 450, 459–460 (9th Cir. 2007)

3    ("The placement of a product into the stream of commerce, without more, is not an act purposefully

4    directed toward a forum state"). Thus, it appears that what constitutes purposeful availment and/or

5    direction under a stream of commerce theory is still an open question in the Ninth Circuit, or at least

6    is still somewhat unsettled.

7         For purposes of deciding the present motion, this court need not resolve these unsettled

8    issues. Following the example of the Second, Third and Federal Circuits (<u>see</u> <u>infra</u>, n.1), this court,

9    as it did previously in the <u>Selzter</u> case, will apply both the O'Connor and Brennan tests. This is not

10   the unique case where the facts are sufficient to find purposeful availment under Justice Brennan's

11   test, but insufficient to find purposeful availment under Justice O'Connor's more stringent test. To

12   the contrary, the facts of this case show that defendant Bumbo-Pty was not only aware that its

13   products would reach the forum state of California, but also acted with the intent and purpose to

14   serve the state. Although the parties have not had the opportunity to conduct discovery and neither

15   party has requested an evidentiary hearing, plaintiffs have submitted sufficient evidence beyond the

16   allegations in their complaint to establish a prima facie case for the court's exercise of personal

17   jurisdiction over defendant Bumbo-Pty.

18        Under Justice Brennan's standard, Bumbo-Pty has placed a product into a "regular and

19   anticipated" stream of commerce and is aware that its product is sold in the United States including

20   in California. Although the record contains no evidence that Bumbo-Pty makes direct sales to

21   customers in the United States, the record reflects that Bumbo-Pty has a relationship with defendant

22   Target Corporation to distribute and sell the product in Target's United States retail stores. Bumbo-

23   Pty's website states that Target is one of its "major" United States customers, and Target

24   Corporation's website states that it has approximately 1,500 stores in 47 states, including over 200

25   stores in California. The Whitson plaintiff in fact purchased the Bumbo Baby Sitter from a Target

26   store in Sonoma County, California and gifted the Sitter to the Lamm plaintiffs. When the United

27   States Consumer Product Safety Commission initiated a voluntary recall of the Bumbo seat in

28   October 2007, its website reported that about 1 million units had been sold in the United States since

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  August 2003, although the website did not provide a separate statistic for the number of units sold in

2  California alone.  Bumbo-Pty cannot plausibly claim, and does not in fact claim, that it is unaware

3  that its product is being marketed and sold in California.  As such, the possibility of a lawsuit arising

4  from the product cannot come as a surprise.  Moreover, by placing a product in the stream of

5  commerce, Bumbo-Pty has benefitted economically from the retail sale of the product in California,

6  and in turn, has also benefitted from the state's laws that regulate and facilitate commercial activity.

7      Under Justice O'Connor's standard, there is additional evidence that Bumbo-Pty has acted

8  with the intent and purpose to serve customers in the United States including customers in

9  California.  Bumbo-Pty's relationship with Target is not fortuitous.  Rather, it has made deliberate

10  overtures to retailers such as Target, advertising on its website that it is a "worldwide" exporter of

11  the Bumbo Baby Sitter, that it "seek[s] reliable and progressive Retailers with the proven ability to

12  promote, sell, stock and serve our products," and that it "will support [the Retailers] with the highest

13  quality merchandise, outstanding promotional programs, and continuous technical training."  The

14  parties have not yet engaged in discovery, and the record does not contain any evidence of a contract

15  between Bumbo-Pty and Target.  The exact terms of the relationship between Bumbo-Pty and

16  Target, including how the relationship may have been initially created and how it is currently

17  maintained, are therefore unknown.  It is clear, nevertheless, that Bumbo-Pty has purposefully

18  sought out, availed itself of, and benefitted from an established distribution channel created by

19  Target and designed to direct products to customers in the United States and California.

20      Moreover, following the voluntary recall of the Bumbo Baby Sitter in October 2007, Bumbo-

21  Pty took affirmative steps to alter the content and placement of its warning label and to alter the

22  images on the product packaging.  These steps, although inadmissible to demonstrate Bumbo-Pty's

23  underlying tort liability, see Fed. R. Evid. Rule 407 (evidence of subsequent remedial measures not

24  admissible to prove negligence or product defect), are admissible and probative to show intent and

25  purpose to respond to customer complaints and to maintain the marketability of its product in the

26  United States and California.

27      Further discovery may call into question the significance of these facts, and the court may

28  revisit the issue of personal jurisdiction at a later date.  At this juncture, however, plaintiffs have met

UNITED STATES DISTRICT COURT
For the Northern District of California

1    their burden to establish a prima facie case that defendant has purposefully directed its products at

2    the forum state and has purposefully availed itself of the benefits and protections of the laws of the

3    state.

4

5         B.    Arising Out Of

6         Under the second prong of the specific jurisdiction analysis, a plaintiff must establish that its

7    claim arises out of or relates to the defendants' forum-related activities.  Bancroft & Masters, Inc. v.

8    Augusta Nat., Inc., 223 F.3d 1082, 1088 (9th Cir. 2000).  In order to satisfy the requirement, the

9    plaintiff must show that "but for" the defendants' forum-related conduct, the injury would not have

10   occurred.  Myers v. Bennett Law Offices, 238 F.3d 1068, 1075 (9th Cir. 2001).  The contacts must

11   also be "sufficiently related to the underlying causes of action" and "have some degree of proximate

12   causation to be considered for purposes of jurisdiction."  Doe v. American Nat'l Red Cross, 112

13   F.3d 1048, 1051–52 (9th Cir. 1997).

14        Here, the claims brought by both the Lamm and Whitson plaintiffs arise from Bumbo-Pty's

15   forum-related activities.  Bumbo-Pty has manufactured the Bumbo Baby Sitter with knowledge,

16   intent and purpose to sell it in California.  Lamm asserts product liability claims seeking damages

17   for injuries sustained as a result of using the Sitter, while Whitson asserts claims for breach of

18   contract arising from her purchase of the Sitter.  But for Bumbo-Pty's invention and manufacture of

19   the Sitter, and Bubmo-Pty's purposeful direction of the Sitter into California, the injuries and harm

20   to the Lamm and Whitson plaintiffs would not have occurred.

21

22        C.    Reasonableness

23        The third and final prong of the specific jurisdiction test requires a balancing of various

24   factors to determine whether the exercise of jurisdiction is reasonable.  Bancroft & Masters, Inc.,

25   223 F.3d at 1088 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985)).  To

26   determine reasonableness, the court must consider (1) the extent of the defendant's purposeful

27   interjection into the forum state, (2) the burden on the defendant of defending in the forum state, (3)

28   the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  in adjudicating the dispute, (5) the most efficient resolution of the controversy, (6) the importance of

2  the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an

3  alternative forum. Id.

4        A balancing of all these factors demonstrates that the exercise of personal jurisdiction over

5  defendant is fair and reasonable. As already discussed above, defendant has purposefully interjected

6  its products into the forum state. Having sold over 1 million units of the Sitter in the United States

7  over a four year period, the extent of defendant's purposeful interjection is not minimal. It is likely

8  that a significant number of units were sold in California. The burden on Bumbo-Pty of defending

9  in the forum state is mitigated insofar as Bumbo-Pty has previous experience with the United States

10  legal system, having successfully prosecuted a patent for the Sitter before the United States Patent

11  and Trademark Office. Defendants, who bear the burden of making a "compelling showing" that the

12  exercise of jurisdiction would be unreasonable, have not raised any issues regarding the extent of

13  conflict with South Africa. Moreover, California's interest in adjudicating the dispute is great.

14  Unlike Asahi, where the Supreme Court was unanimous in concluding that the exercise of

15  jurisdiction would be unreasonable because the only action remaining was a suit for indemnification

16  between a Taiwanese tire manufacturer and a Japanese valve manufacturer, the Lamm and Whitson

17  actions are tort and contract suits brought by a California residents injured in California by a product

18  purchased in California. Finally, while South Africa may provide an alternative forum for resolution

19  of this dispute, it would not provide for the most efficient resolution of the controversy given that

20  other defendants such as Target may not be subject to jurisdiction there and given that it would place

21  a greater burden on the plaintiffs.

22

23        D.    Conclusion

24        Bumbo-Pty has invented, patented, manufactured, and placed a product into the stream of

25  commerce with not only awareness that those products would reach California, but with the intent

26  and purpose to serve the California market. As such, Bumbo-Pty has purposefully directed activities

27  toward the forum state and has also purposefully availed itself of the benefits and protections of the

28  laws of the forum state. The claims asserted by the Lamm and Whitson plaintiffs arise from

14

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1    defendant's conduct of directing the Bumbo Baby Sitter into California retail markets.  Moreover,

2    the exercise of jurisdiction over Bumbo-Pty is fair and reasonable.  In sum, the court concludes that

3    the exercise of specific jurisdiction over defendant Bumbo-Pty is proper because it is permitted by

4    California's long-arm statute and comports with constitutional standards of due process.  Defendant

5    Bumbo-Pty's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is **DENIED**.

6

7    II.    Rule 12(b)(5)—Insufficient Service of Process

8         Defendant Bumbo-Pty moves under Federal Rule of Civil Procedure ("FRCP") Rule 12(b)(5)

9    to dismiss for insufficient service of process.  Once service is challenged, plaintiff bears the burden

10   of establishing that service was valid under FRCP Rule 4.  Brockmeyer v. May, 383F.3d 798, 801

11   (9th Cir. 2004).  When granting a Rule 12(b)(5) motion, federal courts have broad discretion to

12   dismiss the action or to retain the case but quash the service that has been made on the defendant.

13   See Wright & Miller, Federal Practice and Procedure: Civil 3d § 1354, 348.  Service generally will

14   be quashed and the action preserved in those situations in which there is a reasonable prospect that

15   the plaintiff ultimately will be able to serve the defendant properly.  Id.; see also Stevens v. Security

16   Pacific Nat'l Bank, 538 F.2d 1387, 1389 (9th Cir.1976); Montalbano v. Easco Hand Tools, Inc., 766

17   F.2d 737, 740 (2nd Cir. 1985).

18        Bumbo-Pty's moving papers discuss the November and December service attempts directed

19   toward the Conroe, Texas entity that Bumbo-Pty asserts is "Wartburg Enterprises."  These

20   November and December service attempts were directed towards defendants ostensibly identified in

21   the caption as "Bumbo" and "Bumbo Limited."  Bumbo-Pty attests that the Conroe, Texas entity is a

22   separate entity from Bumbo-Pty in South Africa and the two entities do not share common

23   shareholders, officers, directors, employees, or offices.  Moreover, the Conroe, Texas entity is not

24   authorized by Bumbo-Pty to accept service of process on behalf of Bumbo-Pty.

25        Accordingly, the court concludes that because the Conroe, Texas entity is separate and

26   distinct from Bumbo-Pty, service upon the Texas entity is insufficient to effect service upon Bumbo-

27   Pty.  For the same reason, the court also concludes that Bumbo-Pty lacks standing to challenge or

28   quash the November and December service attempts on the Texas entity.  As such, the court's

1  following discussion pertains only to the January service attempt upon Bumbo-Pty in South Africa.

2

3      FRCP Rule 4(h)(2) provides that service upon a foreign corporation, "at a place not within

4  any judicial district of the United States," shall be effected "in any manner prescribed by Rule 4(f)

5  for serving an individual, except personal delivery under (f)(2)(C)(i)."  In turn, FRCP Rule 4(f)

6  states:

7      Unless federal law provides otherwise, an individual—other than a minor, an
       incompetent person, or a person whose waiver has been filed—may be served at a
8      place not within any judicial district of the United States:

9      (1) by any internationally agreed means of service that is reasonably calculated to
           give notice, such as those authorized by the Hague Convention on the
10          Service Abroad of Judicial and Extrajudicial Documents;

11     (2) if there is no internationally agreed means, or if an international agreement
           allows but does not specify other means, by a method that is reasonably
12          calculated to give notice:
           (A) as prescribed by the foreign country's law for service in that country in
13              an action in its courts of general jurisdiction;
           (B) as the foreign authority directs in response to a letter rogatory or letter
14              of request; or
           (C) unless prohibited by the foreign country's law, by:
15              (i) delivering a copy of the summons and of the complaint to the
                   individual personally; or
16              (ii) using any form of mail that the clerk addresses and sends to the
                   individual and that requires a signed receipt; or
17
       (3) by other means not prohibited by international agreement, as the court orders.
18
       Here, plaintiffs' attempted service upon defendant Bumbo-Pty, a South African
19
   corporation, by personally delivering a copy of the summons and complaint to defendant's director
20
   at defendant's corporate headquarters in South Africa.  As will be seen, no part of Rule 4(f)
21
   authorizes service upon a foreign corporation by this method of personal delivery.
22
       The parties are in agreement that many parts of Rule 4(f) are inapplicable.  South Africa is
23
   not a signatory to any international agreement and therefore, FRCP Rule 4(f)(1) is inapplicable.
24
   This court has not issued a letter rogatory or letter of request seeking the assistance of a South
25
   Africa tribunal and thus, FRCP Rule 4(f)(2)(B) is also inapplicable.  Notice was not sent by the
26
   clerk of the court using a form of mail requiring a signed receipt and therefore, FRCP Rule
27
   4(f)(2)(C)(ii) is inapplicable.  Finally, because plaintiffs did not obtain prior court approval before
28

1   attempting service in the manner conducted, FRCP Rule 4(f)(3) is also inapplicable.  See

2   Brockmeyer, 383 F.3d at 806 (without prior court approval for an alternative method of serving

3   process, Rule 4(f)(3) is of no help to plaintiffs).

4        The parties agree that under FRCP Rule 4(f)(2)(A), service may be effected "as prescribed"

5   by the laws of South Africa, but disagree as to whether plaintiffs have in fact complied with those

6   laws.  Defendant has provided the court with a document entitled "Uniform Rules of Court, Rules

7   Regulating the Conduct of the Proceedings of the Several Provincial and Local Divisions of the

8   High Court of South Africa."  Johnston Dec., Exh. D.  Plaintiff does not dispute that this document

9   provides the relevant rules for service in actions in South African courts of general jurisdiction.

10        Within this document, Rule 4(1)(a) states "[s]ervice of any process of the court directed to

11   the sheriff and subject to the provisions of paragraph (aA) any document initiating application

12   proceedings *shall be effected by the sheriff* in one or other of the following manners: [setting forth

13   a variety of methods to effect service, for example, in the case of a corporation, by delivering a

14   copy to a responsible employee at its registered office]."  Id. at 1 (emphasis added).  Defendants

15   argue that Rule 4(1)(a) requires a sheriff to effect service.  Because the individual that delivered

16   the summons and complaint to Bumbo-Pty's corporate offices in South Africa was not a sheriff,

17   defendants argue that plaintiffs have not served process "as prescribed" by South African laws.

18

19        In response, plaintiffs direct the court to examine Rule 4(1)(d) stating, "[i]t shall be the

20   duty of the sheriff *or other person* serving the process or documents to explain the nature and

21   contents thereof to the person upon whom service is being effected . . ."  Id. at 2 (emphasis added).

22   Plaintiffs argue that based on this language, service of process is not the exclusive domain of the

23   sheriff, but may also be performed by other persons.  Therefore, plaintiffs argue, the fact that the

24   individual who delivered the summons and complaint to Bumbo-Pty's corporate headquarters was

25   not a sheriff, does not imply that service has not been effected as prescribed by South African law.

26        The court notes, however, that use of the phrase "or other person" in Rule 4(1)(d) appears

27   to refer to "the party" as used in Rule 4(1)(aA).  The preface to Rule 4(1)(a) states explicitly that

28   service effected by the sheriff is "subject to the provisions of paragraph (aA)."  Id. at 1.  In turn,

1  paragraph (aA) states, "[w]here the person to be served with any document initiating application

2  proceedings is already represented by an attorney of record, such document may be served upon

3  such attorney *by the party* initiating such proceedings." Id. at 2 (emphasis added).  Paragraph

4  (aA), therefore, appears to create an exception to the general rule requiring service to be effected

5  by a sheriff and allows service by a party upon an attorney of record.  Contrary to plaintiff's

6  interpretation, the use of the phrase "or other person" in paragraph (d) does not refer to *any* person

7  who is not a sheriff, but appears to refer specifically to "the party initiating such proceedings" as

8  used in paragraph (aA).

9      The court concludes that with respect to FRCP Rule 4(f)(2)(A), plaintiffs have not met

10 their burden to demonstrate that service was effected by a method "as prescribed by the foreign

11 country's laws."  Plaintiffs have not met their burden because South African laws appear to require

12 service to be effected by a sheriff, with an exception for service by a party upon an attorney of

13 record.  Here, the individual that delivered the summons and complaint to Bumbo-Pty's director at

14 the corporate headquarters in South Africa was neither a sheriff nor a party.  Moreover, even

15 assuming *arguendo*, that the South African rules can be interpreted to allow a party to appoint an

16 agent to effect service, plaintiff has offered no evidence that the person served, Antoinette

17 Wagennar, is an attorney, much less an attorney of record.

18     The final provision of FRCP Rule 4(f) that remains to be considered is paragraph (2)(C)(i),

19 which allows "deliver[y] [of] a copy of the summons and of the complaint to the individual

20 personally."  Prior to amendment in 1993, former Rule 4(i)(1)(C) permitted service on an

21 individual in a foreign country to be made by personal delivery and upon a corporation,

22 partnership, or association by delivery to an officer, or managing or general agent of the

23 organization.  See Wright & Miller, Federal Practice and Procedure: Civil 3d § 1134, 327–328; see

24 also 151 F.R.D. 441, 462–463.

25     The current Rule 4(f)(2)(C)(i), effective as a result of the 1993 amendment, continues to

26 provide for personal delivery upon an individual in a foreign country, but the provision referring to

27 service by delivery to a corporate officer abroad has been removed.[2]  Id.  The current Rule 4(h)(2)

28 states that service upon a foreign corporation may be achieved in any manner prescribed by Rule

18

UNITED STATES DISTRICT COURT
For the Northern District of California

4(f), *except* personal delivery under (f)(2)(C)(i).  One commentator has interpreted the current rule

as "no longer permitt[ing]" personal delivery on a corporate officer abroad.  See Wright & Miller,

Federal Practice and Procedure: Civil 3d § 1134, 328.  Another commentator has interpreted the

current rule to mean only that "if personal delivery to [a corporate officer or agent] outside the

country is to be used, it [must] find authorization outside clause (C)(i)."  See 151 F.R.D. at 463.

Under either interpretation, the manner of service performed in this case is not authorized by Rule

4(f) because Rule 4(f)(2)(C)(i) is inapplicable, and as the court has already discussed, personal

delivery in the manner conducted here is not authorized by any clause outside Rule 4(f)(2)(C)(i).

In sum, the court concludes that plaintiffs have not met their burden to demonstrate that

service of process was valid under any applicable provision of Rule 4(f).  Accordingly,

defendant's Rule 12(b)(5) motion to dismiss for insufficient service of process is **GRANTED**.  As

a remedy, defendant asks the court to both quash the service that has been made on it as well as

dismiss the claims against it.  However, the court finds that there is a reasonable prospect that the

plaintiff will ultimately be able to serve the defendant properly.  In its discretion, the court

**QUASHES** the January 25, 2008 service attempt and the accompanying affidavits of service filed

with the court on February 11, 2008 (C 07-04807, Docket Entry 37; C 07-05597, Docket Entry

35).  Plaintiffs are **ORDERED** to perfect service upon defendant Bumbo-Pty, in accordance with

FRCP Rules 4(h) and 4(f), **within 30 days** of the date of this order.

As a final matter, plaintiffs request that the court, in the event it grants defendant's Rule

12(b)(5) motion, "fashion its own manner of effective service pursuant to FRCP Rule 4(f)(3)."

Lamm Opp. Filed March 3, 2008 at 2–3.  Rule 4(f)(3) allows a court to order service of process in

foreign countries by any means likely to impart notice, "even in contravention of the laws of the

foreign country," as long as not prohibited by an international agreement.  Rio Properties, Inc. v.

Rio Int'l Interlink, 284 F.3d 1007, 1014 (9th Cir. 2002).  Rule 4(f)(3) "is an equal means of

effecting service of process under the Federal Rules of Civil Procedure," and a plaintiff "need not

have attempted every permissible means of service of process before petitioning the court for

alternative relief."  Id. at 1016.  The decision whether to allow alternative methods of serving

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   process under Rule 4(f)(3) is committed to the "sound discretion of the district court" which may

2   determine "when the particularities and necessities of a given case require alternatives." Id.

3       Plaintiffs request that the court enter an order "that service be effected by personal delivery

4   at the defendant's primary place of business," and then "find that service has indeed been effected"

5   pursuant to the court's order. Id. Plaintiffs request this remedy "so that the Court and the parties

6   hereto can move forward with this litigation." Id. As the court has already explained, however,

7   Rule 4(f)(3) is of "no use" to plaintiffs because plaintiffs must have obtained "*prior* court

8   approval" for their proposed alternative method of serving process. Brockmeyer, 383 F.3d at 806.

9   Rule 4(f)(3) cannot be used to seek ex-post ratification of a prior ineffective attempt at service of

10  process.

11      Moreover, plaintiffs' desire "to move forward with this litigation" is insufficient

12  justification for the court to authorize alternative means of service. Unlike the case in Rio

13  Properties where the plaintiff had made multiple unsuccessful attempts to locate an "elusive

14  international defendant, striving to evade service of process," Rio Properties, 284 F.3d at 1013,

15  1016, in this case, the physical location of defendant in South Africa is well-known to plaintiffs

16  and there is no indication that defendant is trying to evade service. The particularities and

17  necessities of this case currently do not require this court to order alternative methods of service of

18  process.

19

20  III.   Set Aside Default

21      Bumbo-Pty has also moved to set aside default entered on December 27, 2007 against

22  defendant "Bumbo." On November 17, 2007, the Whitson plaintiffs served the Conroe, Texas

23  entity believing that it was "Bumbo," when in fact according to defendants, the entity is Wartburg

24  Enterprises. As the court has already explained, because Bumbo-Pty and the Texas entity are

25  separate companies, Bumbo-Pty does not have standing to challenge the service of process upon

26  the Texas entity, and likewise, does not have standing to set aside the default judgment as to the

27  Texas entity. Accordingly, the court **DENIES** Bumbo-Pty's motion to set aside the December 27,

28  2007 default.

20

UNITED STATES DISTRICT COURT
For the Northern District of California

1

2    IV.    Sanctions

3          Bumbo-Pty requests sanctions in the amount of $10,716 for plaintiff's efforts to "'back

4    door' Bumbo-Pty into this lawsuit by attempting ineffective, sloppy and improper service on non-

5    existent entities on multiple occasions and then forcing defendant to spend time and money filing

6    motions to quash/dismiss." Def.'s Reply Filed in Lamm action on February 25, 2008 at 1–2.  The

7    court understands that because of plaintiff's multiple attempts to serve process on each of the

8    Bumbo-related entities in this case, defendant may have found it necessary to respond in turn.

9    However, the court also notes that defendant has inundated the court and the plaintiffs with

10   substantially similar amended versions of their briefs.  See C 07-05597, Docket Entries 9 and 20;

11   C 07-04807, Docket Entries 23 and 31.  Having found that no circumstances warrant the

12   imposition of sanctions, the court **DENIES** defendant's motion.

13

14   CONCLUSION

15          For the foregoing reasons, the court **DENIES** Bumbo-Pty's (1) motion to dismiss for lack

16   of personal jurisdiction; (2) motion to set aside default entered on December 27, 2007 as to

17   defendant "Bumbo" in the Whitson action; and (3) motion for sanctions.

18          The court **GRANTS** Bumbo-Pty's motion to dismiss for insufficient service of process,

19   **QUASHES** the January 25, 2008 service attempt on Bumbo-Pty in South Africa, and **ORDERS**

20   plaintiffs to perfect service upon defendant Bumbo-Pty, in accordance with FRCP Rules 4(h) and

21   4(f), **within 30 days** of the date of this order.

22

23          IT IS SO ORDERED.

24

25   Dated: May 13, 2008                                    _____

26                                                          MARILYN HALL PATEL
                                                            United States District Court Judge
27                                                          Northern District of California

28

21

1

## ENDNOTES

2

3

1.      Among the six circuits that have expressly adopted one of the two <u>Asahi</u> approaches, there is disagreement.  The Fifth, Seventh, and Eighth Circuits have followed Justice Brennan's "stream of commerce" approach.  <u>See</u> <u>Ruston Gas Turbines, Inc. v. Donaldson Co.</u>, 9 F.3d 415, 419–20 (5th Cir. 1993); <u>Dehmlow v. Austin Fireworks</u>, 963 F.2d 941, 946–948 (7th Cir. 1992); <u>Barone v. Rich Brothers Interstate Display Fireworks Co.</u>, 25 F.3d 610, 613–615 (8th Cir. 1994).

4

5

6

        In contrast, the First, Fourth, and Sixth Circuits have followed Justice O'Connor's "stream of commerce plus" approach.  <u>See</u> <u>Boit v. Gar-Tec Products, Inc.</u>, 967 F.2d 671, 682–83 (1st Cir. 1992); <u>Lesnick v. Hollingsworth & Vose Co.</u>, 35 F.3d 939, 944–46 (4th Cir. 1994); <u>Bridgeport Music, Inc. v. Still N the Water Publishing</u>, 327 F.3d 472, 479–80 (6th Cir. 2003).

7

8

        The Second, Third, and Federal Circuits have refused to express a preference for one approach over another.  <u>See</u> <u>Kernan v. Kurz-Hastings, Inc.</u>, 175 F.3d 236, 244–45 (2d Cir. 1999); <u>Pennzoil Products Co. v. Colelli & Associates, Inc.</u>, 149 F.3d 197, 207 n.11 (3rd Cir. 1998); <u>Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.</u>, 395 F.3d 1315, 1322 n.7, 1323–1324 (Fed. Cir. 2005).

9

10

11

        The Eleventh Circuit has expressed some ambivalence.  It has issued opinions both embracing Justice O'Connor's standard and declining to adopt either standard.  <u>Compare</u> <u>Vermeulen v. Renault, U.S.A., Inc.</u>, 985 F.2d 1534, 1547–48 (11th Cir. 1993) <u>with</u> <u>Madara v. Hall</u>, 916 F.2d 1510, 1519 (11th Cir. 1990).

12

13

14

2.      Under the current rule, a foreign corporation may be served by personal delivery upon an officer or agent *within* a judicial district of the United States under Rule 4(h)(1).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**